**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| Noukay Chantharath, | |
| Petitioner, | |
| vs. | Case No. 0:26-cv-01920-DMT-LIB |
| Markwayne Mullin[1], Secretary, Department of Homeland Security et al., | |
| Respondents. | |

---

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

---

[¶ 1]    THIS MATTER comes before the Court on a Petition for Writ of Habeas Corpus filed on March 18, 2026. Doc. No. 1. The Respondents filed a Response on March 23, 2026. Doc. No. 4. Petitioner filed a Reply on March 24, 2026. Doc. No. 6.

[¶ 2]    Petitioner is a 55-year-old native of Laos. Doc. No. 1, p. 8. He entered the United States in 1979 as a refugee. Id. He became a lawful permanent resident in 1981. Doc. No. 5, p. 2. Over the next several decades, Petitioner was convicted of several crimes in state court including obstructing legal process in 1993, domestic abuse in 2007, a controlled substance offense in 2009, and obstruction of legal process in 2009. Id. at 2–3. These convictions ultimately led to removal proceedings, at the conclusion of which an immigration judge ordered him removed to Laos on November 1, 2011. Doc. No. 5-1. A week after the removal order was issued, ICE officers encountered Petitioner in a county jail following his arrest for driving while intoxicated. Doc. No. 5, p. 3. He was released from ICE custody on an Order of Supervision on February 10, 2012. Id.

---

[1] See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

at 4. However, Petitioner's criminal activity continued: he was arrested in 2017 for second degree assault and domestic abuse and convicted in 2024 of fifth degree assault. Id. On January 27, 2026, ICE received a valid travel document for Petitioner, confirming the Government of Laos's willingness to accept repatriation. Id. Accordingly, ICE renewed steps to remove Petitioner. On February 6, 2026, Petitioner was served with an administrative warrant and arrested. Doc. Nos. 5, p. 4; 5-3.  The same day, his Order of Supervision was formally revoked based on a change in circumstances, namely the travel document and increased likelihood of Petitioner's removal. Doc. No. 5, pp. 4–5. Petitioner was also afforded an informal interview to respond to the reasons for the revocation of his order for supervision, where he indicated he has four children in the United States, no family in Laos, and was not aware of the 2011 removal order. Doc. No. 5-4. On February 7, 2026, ICE submitted its formal Notice of Revocation of Release indicating it had obtained a travel document and would schedule Petitioner's removal. Doc. No. 5-2. Petitioner claims this process violates (1) 8 U.S.C. § 1231, (2) his procedural and substantive due process rights, and (3) the Accardi doctrine. Doc. No. 1, pp. 14–16. For the reasons set forth below, the Petition is **DENIED** and **DISMISSED without prejudice**.

## DISCUSSION

### I.    Legal Standard: Habeas Corpus

[¶ 3]    The Constitution provides the right to a Writ of Habeas Corpus, which requires authorities to present a detained person before the court to determine if the detainment is lawful. See U.S. Const. Art. I, § 9. "Habeas is at its core a remedy for unlawful executive detention." Munaf v. Green, 553 U.S. 674, 693 (2008). As a general matter, 28 U.S.C. § 2241 grants district courts broad jurisdiction to issue a writ of habeas corpus "as law and justice require." Jones v. Hendrix, 599 U.S. 465, 473 (2023). A prisoner can bring a petition for a writ of habeas corpus when "[h]e is in

- 2 -

custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has held that § 2241(c)(3) confers jurisdiction on district courts to hear habeas corpus challenges to the legality of the detention of aliens. Rasul v. Bush, 542 U.S. 466 (2004).

[¶ 4]    To benefit from the writ's protection, a habeas petitioner bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful. Maldonado v. Olson, 795 F. Supp. 3d 1134, 1143 (D. Minn. 2025) (collecting cases). Since the Petitioner is currently being held in Minnesota, this Court has jurisdiction over this matter. See Trump v. J.G.G., 604 U.S. 670, 672 (2025) (per curiam) (holding that jurisdiction for core habeas petitions "lies in only . . . the district of confinement").

## II.    Detainment under § 1231

[¶ 5]    Generally, after an order of removal the government has 90 days to remove the alien from the United States, starting from either the date the order is administratively final, the date of a judicial review of the order, or after other confinement is complete. 8 U.S.C. § 1231(a)(1)(A)–(B). After 90 days, detainees are released on supervision unless they are determined "to be a risk to the community or unlikely to comply with the order of removal." Id. § 1231(a)(3), (6). Supervision, including its revocation, is governed by regulation. Id. § 1231(a)(3).

> Upon revocation, the alien will be **notified of the reasons for revocation** of his or her release. The Service will conduct an **initial informal interview promptly after his or her return to Service custody** to **afford the alien an opportunity to respond to the reasons for revocation** stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3) (emphasis added).

[¶ 6]    The appropriate process was followed in this case. The Petitioner was brought into ICE custody on February 6, 2026. He was notified of the reasons for the revocation of his release. He submitted to the informal interview and was given an opportunity to respond. The Petitioner argues at length how the formal Notice of Revocation was not given to him until the next day. However, the Regulation does not require notification to be given before an alien's arrest, it just requires notification. 8 C.F.R. § 241.13(i)(3). Based upon the evidence before the Court, ICE complied with its regulatory requirements. ICE assessed obtaining the travel document for Petitioner was a change in circumstances that significantly increased the likelihood he may be removed in the foreseeable future, justifying revocation. § 241.13(i)(2). ICE then arrested Petitioner, promptly notified him of the reasons for his revocation, and afforded him an informal interview to respond. § 241.13(i)(3). It is well within ICE's authority to detain Petitioner—an alien ordered removed after several criminal offenses—to remove Petitioner to his home country of Laos. The Court, therefore, finds Petitioner's arrest and detention does not violate 8 U.S.C. § 1231.

###    III.    Due Process

[¶ 7]    Petitioner argues his due process rights have been violated by his continued detention. In Zadvydas v. Davis the Supreme Court held a six-month detention is presumptively reasonable, but after that time detention may become unreasonable. 533 U.S. 678, 701 (2001). In this case, Petitioner has been detained for a little less than two months. Doc. No. 5, p. 4. The Court will not combine this detention with Petitioner's three-month detention in 2011 because Zadvydas did not address a situation where an alien was re-detained for a change in circumstances and it does not suggest detention periods should be combined, which would greatly impede removal efforts. See Barrios v. Ripa, Case No. 1:25-cv-22644-GAYLES, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8,

2025) ("[I]f the Court counted detentions in the aggregate, any subsequent period of detention, even one day, would raise constitutional concerns. And adjudicating the constitutionality of every re-detention would obstruct an area that is in the discretion of the Attorney General—effectuating removals."). Accordingly, the Court concludes Petitioner's detention is presumptively reasonable.

[¶ 8]   Even if Petitioner's detention surpasses six months, the presumption "does not mean that every alien not removed must be released after six months. Rather, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. Other courts have previously recognized several situations that meet this criteria: no country will accept the detainee, origin or other foreign country refuses travel documents or delays to the point of a presumption they will never be issued, or political conditions of the country of origin. See Ahmed v. Brott, Civ. No. 14-5000 (DSD/BRT), 2015 WL 1542131, at *4 (D. Minn. Mar. 17, 2015). "In other words . . . there must be some indication that the government is either unwilling or, due to seemingly insurmountable barriers, incapable of executing an alien's removal." Id.

[¶ 9]   These barriers do not exist in the present case. At the present time, Petitioner is well within the constitutional bounds for detention while the Respondents attempt to secure his removal to Laos. Petitioner has presented no evidence Loas is unable or unwilling to accept his deportation at this time. To the contrary, Respondents provide a declaration from an ICE deportation officer stating ICE recently received a valid travel document for Petitioner, confirming Laos is now willing to accept Petitioner's repatriation. Doc. No. 5, p. 4. Based on this travel document, Respondents reasonably believe it is an appropriate time to attempt to remove him. For constitutional purposes, because Petitioner's detention is still well within the six-month

presumptive period under <u>Zadvydas</u> and Respondents have a strong reason to believe Petitioner's removal will occur in the reasonably foreseeable future, his due process claim necessarily fails.

### IV.   <u>Accardi</u> Doctrine

[¶ 10]  Petitioner's final claim asks the court to set aside the agency's actions under <u>Accardi</u>. This claim, however, is premised on the success of Petitioner's underlying claims, which the Court has rejected. <u>See</u> <u>Accardi v. Shaughnessy</u>, 347 U.S. 260, 268 (1954) ("If Petitioner can prove the allegation [that the agency failed to follow its rules in a hearing] he should receive a new hearing."). Because the Court concludes the agency followed its regulations, the Court finds there is no justification to set aside its action in detaining Petitioner while it attempts to remove him to Laos. <u>See</u> 8 C.F.R. § 241.4(i)(3).

### CONCLUSION

[¶ 11]  Accordingly, for the reasons set forth above, the Petitioner's Habeas Petition is **DENIED**. This action is **DISMISSED without prejudice**.

[¶ 12]  **IT IS SO ORDERED**.

DATED March 31, 2026.

Daniel M. Traynor, District Judge
United States District Court